# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TEH SHOU KAO, et al.** | : | CIVIL ACTION |
| v. | : | |
| **CARDCONNECT CORP.** | : | NO. 16-CV-5707 |

## MEMORANDUM AND ORDER

Ditter, J.                                                                                                                                    September 26, 2018

      This case comes before me on cross-motions for a determination of the terms of implied contracts between the plaintiffs, Teh Shou Kao, T.S. Kao, Inc., Tech Lounge SP, LLC, and the Law Offices of Kevin Adams, PLLC, and the defendant CardConnect. Plaintiffs retained CardConnect to process their customers' credit card payments in exchange for a fee. I have already concluded that the written contracts offered by CardConnect were never formed because CardConnect failed to sign them.

      I. <u>Factual findings</u>

      Plaintiffs are all small family-owned and operated businesses that were contacted by CardConnect agents to offer payment processing services. They were all promised they would save money. The agents met with the plaintiffs at their place of business and presented them with a "Merchant Processing Application" that included a "Service Fee Schedule" that set forth the prices CardConnect would charge.

      The service fee schedules indicated Plaintiffs would be subject to "Pass Through Interchange" pricing, that is, Plaintiffs would be charged the actual fees imposed by the

credit card network plus an extra, specified amount for CardConnect's services. This type of pricing is commonly referred to as "cost-plus" or "interchange-plus" pricing and is CardConnect's most common pricing plan.

In addition to cost-plus pricing, the service fee schedules indicate that the plaintiffs would pay other specified fees to CardConnect, including authorization fees, monthly fees, annual fees, and per transaction fees. Plaintiffs each received and signed the applications that contained the service fee schedules setting forth their applicable pricing. As an example, Kao, Inc.'s merchant processing agreement set forth the following fees:

> A.) Authorization and capture fees of $0.07 for MasterCard, Visa, Discover, and American Express;
>
> B.) Miscellaneous fees:
>     1.) Dues and Assessments
>         a.) Charge back fee – $25.00 per item
>         b.) Retrieval fee – $20.00 per item
>         c.) Batch fee – $0.35 per item
>         d.) Early termination fee – $750.00
>     2.) Annual fee – $99.00
>     3.) Monthly minimum fee – $35.00
>     4.) Monthly statement fee– $5.00
>     5.) Debit access fee – $5.00
>     6.) Reg. product fee – $3.50 per month
>     7.) PCI non-compliance fee – $19.95 per month
>
> C.) Pass through interchange of .25% discount (based on gross sales) for Master Card, Visa, Discover, and American Express credit and debit charges.
>
> D.) Pass through debit network fees of $0.15 per item

Despite the specificity of the fees schedule, Plaintiffs were charges other fees including, "junk fees," inflated pass through fees, junk fees represented as pass through

2

fees, and unwarranted fees. In addition, CardConnect automatically deducts the prior month's processing fees from it's customer bank accounts, and it is only after the fees have been deducted that the customer receives his monthly statement itemizing the fees. As the fees are deducted before the customer is billed, the statements note that "THIS IS NOT A BILL."

Plaintiffs also complain that many of these extra fees are assessed without advance notice or after false and misleading notice. For example, Tech Lounge was not notified that is would be charged a $10.00 minimum monthly fee during months when it was already paying over $10.00 in fees.

When there were notices, they were difficult to understand. One example is the CardPointe Fee notice provided as part of a statement of processing fees provided to Lucky 7. The second page stated:

> INTRODUCING CARDPOINTE! CARDPOINTE IS CARDCONNECT'S NEW PLATFORM THAT FULFILLS ALL YOUR PAYMENT NEEDS. YOU NOW HAVE ACCESS TO: * CARDPOINTE MOBILE APP: DOWNLOAD FROM IOS AND ANDROID APPS STORES FOR THE ON-THE-GO TRANSACTION MANAGEMENT AND PAYMENT PROCESSING. * CARDPOINTE TERMINAL: PLUG AND PLAY HARDWARE TERMINAL FEATURING PCI-VALIDATED POINT-TO-POINT ENCRYPTION. * CARDPOINTE VIRTUAL TERMINAL: LOG INTO CARDPOINTE AND PROCESS TRANSACTIONS FROM YOUR BROWSER, COMPLETE WITH CUSTOMER PROFILES AND BILLING PLANS. * CARDPOINTE API & HOSTED PAYMENT PAGES: INTEGRATED PAYMENTS INTO ECOMMERCE SITE AND MOBILE APPS. LEARN MORE AT CARDCONNECT.COM/ CARDPOINTE. PLEASE NOTE: THIS PROGRAM IS BEING OFFERED AND PROVIDED SOLELY BY CARDCONNECT. FDMS, (WELLS FARGO BANK/SPONSOR) AND THEIR RESPECTIVE

> AFFILIATES AND AGENTS. ARE NOT AFFILIATED WITH, AND
> SHALL HAVE NO OBLIGATIONS OR LIABILITY WITH RESPECT
> TO, THIS PROGRAM. EFFECTIVE WITH YOUR APRIL 2016
> STATEMENT, YOUR STATEMENT FEE WILL BE INCREASED BY
> $10.00. THE MARCH 2016 STATEMENTS HAD A TYPO ABOUT THE
> INCREASE, AND IT WILL GO INTO EFFECT WITH THE APRIL 2016
> STATEMENTS. EFFECTIVE WITH YOUR APRIL 2016 STATEMENT,
> THE STATEMENT FEE HAS BEEN RENAMED CARDPOINTE FEE.
> IF YOU HAVE ANY QUESTIONS, PLEASE CALL THE CUSTOMER
> SERVICE NUMBER LISTED AT THE TOP OF YOUR STATEMENT.

Even if Lucky 7 could understand this notice, it could reasonably believe it did not apply to it for several reasons: 1) it was not a customer in March and did not receive the erroneous March statement; 2) it was not charged with the fee in its April statement, and 3) it was reasonable to conclude that you needed to download an app in order to avail yourself of this service. However, in May 2016, CardConnect began charging a $15.00 per month CARDPOINTE FEE to Lucky 7, apparently because CardConnect had renamed the $5.00 service fee, and despite the fact that no new service had been provided for the additional $10.00.

Similar procedures were used to add an "EMV/P2PE FEE," and a "DATA BREACH FEE." Again the notices were included in monthly statements but were less than clear and appeared to give the customer the option of participating when it was required to opt out of the program.

II. Discussion

The limited purpose of this decision is to determine the terms agreed to when the parties entered this implied contract. Here, CardConnect, through its agents, provided

4

each Plaintiff with a service fee schedule that set forth the fees and rates it would charge and Plaintiffs agreed to those fees.

CardConnect contends those fees were merely introductory and it was free to modify them at its discretion. It appears to rely on provisions of the Merchant Processing Application and the Program Guide to support it ability to modify the original terms set forth in the application. However, the application was never signed by CardConnect or Wells Fargo Bank. Since the application did not come into effect, neither did the Program Guide. In the absence of any provision allowing for modification of the services and fees set forth in each Plaintiff's service fee schedule provided when they agreed to change their card processing service to CardConnect, the plaintiffs agreed to be bound by those fees and services only.

Nor can CardConnect's unsolicited and often confusing offers in billing statements permit modification of the implied contract without the explicit consent of the customer. In some cases, the fees had already been deducted before the billing statement was provided. Although in some cases, Plaintiffs called and sought refunds for certain fees and CardConnect refunded the charges, in others the new fee was hidden and went unnoticed. In some cases fees were charged for a service that was never requested or used. It is also important to note that some merchants were faced with a large penalty if they terminated accounts early because they objected to a new fee. Such practices are contrary to a finding of mutual consent to amend the terms of an implied contract.

III. Conclusion

CardConnect agreed to provide its services for the fees and rates set forth in each Plaintiff's service contract and is limited to those terms absent a mutual modification of the implied contract. All unsolicited and unilateral changes made in various billing statements that were not by mutual agreement are not binding on the plaintiffs. In the absence of an allegation by CardConnect that a plaintiff agreed to a contract modification, the fees originally set forth stand.

An appropriate order follows.