IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEH SHOU KAO, and T S KAO, INC., on behalf of themselves and all others similarly situated,<br><br>      *Plaintiffs,*<br> v.<br><br>CARDCONNECT CORP.,<br><br>      *Defendant.* | CONSOLIDATED CIVIL ACTION<br>NO. 16-5707 |
| TECH LOUNGE SP, LLC, and THE LAW OFFICE OF KEVIN ADAMS, PLLC, on behalf of themselves and all others similarly situated,<br><br>      *Plaintiffs,*<br> v.<br><br>CARDCONNECT CORP.,<br><br>      *Defendant.* | |

**PAPPERT, J.**                             **June 26, 2019**

### MEMORANDUM

  Plaintiffs are family-owned and operated small businesses: T S Kao, Inc., is a Chinese restaurant in Michigan run by Teh Shou Kao and his wife; Tech Lounge SP, LLC, is a video game lounge and coffee bar in Wisconsin owned by a husband and wife; and The Law Office of Kevin Adams, PLLC, is a firm in Michigan staffed by a husband, wife and their daughters. Plaintiffs used CardConnect, a merchant services provider, to process their debit and credit card payments. After CardConnect allegedly charged unauthorized rates and fees, Plaintiffs filed class action lawsuits.

1

The case was previously assigned to Judge Ditter, who determined that there was no express binding contract between the parties. Although the parties agreed that there was an implied contract, they disputed its terms. Judge Ditter directed the parties to take discovery on that issue and then submit briefs on their respective proposed terms. After reviewing the parties' extensive submissions and responses thereto, Judge Ditter agreed with the Plaintiffs that a service contract between the parties dictated the terms of the implied agreement. CardConnect seeks reconsideration of Judge Ditter's findings or, in the alternative, certification for interlocutory review. For the reasons set forth below, the Court denies CardConnect's Motion for Reconsideration as well as its request for certification for interlocutory review.

I

Judge Ditter discussed the facts of this case in a prior memorandum. *See* (Order, ECF No. 68). Kao and T S Kao filed their four-count class action Complaint against CardConnect on November 1, 2016. *See* (Compl., ECF No. 1). In Counts One and Two, they alleged that no binding contract existed between the parties and, as a result, CardConnect was unjustly enriched. *See* (*id.* at ¶¶ 79–89). In Counts Three and Four, Plaintiffs pled an alternative theory of liability: if a contract existed, then CardConnect breached it and the implied covenant of good faith and fair dealing, and certain contract terms were invalid. *See* (*id.* at ¶¶ 90–107).

The parties filed a joint status report on September 22, 2017. (Status Report, ECF No. 40.) In it, they disagreed about the discovery process with respect to class certification. Plaintiffs proposed "proceeding with class discovery, followed by a motion

for class certification, and then dispositive motion practice." (*Id.* at 4.) CardConnect, however, proposed to narrow the issues first. (*Id.* at 2.) Specifically:

> Defendant believes that the Court envisioned the matter proceeding in a phased approach starting with discovery related to the named Plaintiffs, the parties agreeing to Stipulated Facts to narrow the issues in dispute and identify the legal theories that the Plaintiffs seek to pursue on a class basis . . . [T]he discovery produced to date should enable the Plaintiffs to determine whether they will pursue their claims that there is no enforceable written contract between the parties (Count I) and that they are entitled to recovery under an unjust enrichment theory (Count Two), or that there is an enforceable contract between the parties, but CardConnect breached an implied covenant of good faith and fair dealing (Count Three), and that certain contractual terms are unconscionable (Count Four).

(*Id.* at 2–3.) Also in their joint status report the parties requested consolidation with *Tech Lounge SP, LLC, and The Law Office of Kevin Adams, PLLC, v. CardConnect Corp.*, No. 17-4014 (E.D. Pa. Sept. 7, 2017), because the plaintiffs there had filed a class action Complaint against CardConnect on September 7, 2017, alleging the same four counts as in *Kao*. (*Id.* at 2.); *see Tech Lounge SP, LLC, and The Law Office of Kevin Adams, PLLC, v. CardConnect Corp.*, No. 17-4014 (E.D. Pa. Sept. 7, 2017), (Compl. ¶¶ 90–126, ECF No. 1). The cases were consolidated on September 26, 2017. *See Kao and T S Kao, Inc., v. CardConnect Corp.*, No. 16-5707 (E.D. Pa. Sept. 26, 2016), (Order, ECF No. 41).

No written record exists of Judge Ditter's ruling with respect to the discovery dispute; however, on October 10, 2017, CardConnect filed a memorandum arguing that there was a binding express contract between the parties, and if not, there was an implied contract. *See* (Def.'s Mem., ECF No. 44). In response, Plaintiffs asserted that there was no binding express contract but conceded that there was an implied contract. *See* (Pls.' Ans., ECF No. 45). At some point thereafter during a telephone conference,

Judge Ditter determined there was no express binding contract between the parties.[1] Neither side sought reconsideration of this ruling.

From November 2017 to January 2018, the parties unsuccessfully attempted to stipulate to the terms of the implied contract. *See* (ECF Nos. 47, 51–52, 55). Consequently, Judge Ditter ordered the parties to conduct discovery on that issue. *See* (Stip. Sched. Order, ECF No. 58). On March 26, 2018, the parties filed memoranda on their respective proposed implied contract terms. S*ee* (ECF Nos. 60–61). Plaintiffs argued that "[t]he Court should hold that the implied contract terms required CardConnect to process Plaintiffs' payments in accordance with the Service Fee Schedule." (Pls.' Mem. at 1, ECF No 60.) CardConnect, however, urged Judge Ditter to consider the Service Fee Schedule among other "communications, correspondence, and the parties' own course of dealings and course of performance." (Def.'s Mem. at 2, ECF No. 61.) In addition to the parties' memoranda and numerous exhibits, they also filed responses. S*ee* (ECF Nos. 65–67).

On September 26, 2018, Judge Ditter ruled in favor of the Plaintiffs, finding that "CardConnect agreed to provide its services and rates set forth in each Plaintiff's service contract and is limited to those terms absent a mutual modification of the implied contract." (Order, ECF No. 69.) On October 10, 2018, the case was reassigned from Judge Ditter to this Court. *See* (ECF No. 70). That same day, CardConnect moved for reconsideration or, in the alternative, certification for interlocutory review of Judge Ditter's September 26 Order. (Mot. Recons., ECF No. 71.)

---

[1] There is no record of Judge Ditter's ruling on ECF.

4

II

A motion for reconsideration should be granted "sparingly" and should not be used to "rehash arguments which have already been briefed by the parties and considered and decided by the [c]ourt." *PBI Performance Prods., Inc. v. NorFab Corp.*, 514 F. Supp. 2d 732, 744 (E.D. Pa. 2007) (citation omitted). It should not give a party a "second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995). "A motion for reconsideration is not properly grounded on a request that a court reconsider repetitive arguments that have already been fully examined by the court . . . ." *Vaidya v. Xerox Corp.*, No. 97-547, 1997 WL 732464, at *4 (E.D. Pa. Nov. 25, 1997). A party seeking reconsideration must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Thus, a motion for reconsideration may address "only factual and legal matters that the Court may have overlooked" and may not "ask the [c]ourt to rethink what it had already thought through—rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation omitted).

CardConnect timely filed its Motion pursuant to Local Rule 7.1(g), arguing that the Court erred by failing to apply the law governing implied contracts and by failing to cite to a single legal authority. (Mot. Recons. at 2.) CardConnect also asserts that the Court committed a clear error of law when it "circumvented the role of the jury and decided the central issue by weighing evidence and deciding disputed issues of fact."

(*Id.* at 1.) As a result, CardConnect contends that the Court should reconsider Judge Ditter's September 26 Order to prevent manifest injustice. Plaintiff, however, argues that "Defendant clearly does not agree with [Judge Ditter's] ruling . . . [but] Defendant cannot argue that it was not given a full and fair opportunity to make its case *before* the Court ruled." (Resp. Opp'n at 1, ECF No. 72) (emphasis in original).

CardConnect fully briefed the issue of implied contract terms. Its Motion recites law and facts that were previously brought to Judge Ditter's attention. Although Judge Ditter did not cite to any authority in his September 26 Order, the Court has no basis to determine that he overlooked or failed to consider any of the arguments presented in the parties' memoranda and responses. "The fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration." *Morton v. Fauver,* No. 97–5127, 2011 WL 2975532, at *3 (D.N.J. July 21, 2011). For example, Judge Ditter referenced "junk fees," inflated pass through fees and junk fees presented as pass through fees. (Mem., ECF No. 68.) Both parties elaborate upon these fees in their memoranda. *See, e.g.*, (Pls.' Mem. at 3–5, ECF No. 60; Def.'s Mem. at 6–7, ECF No. 61). Moreover, Judge Ditter cited in his Memorandum a CardPointe Fee notice provided to T S Kao, concluding that the notice is difficult to understand. (Mem. at 3.) CardConnect had attached to its Memorandum an exhibit with the same language, arguing that Kao had received advance notice of the fee and paid it without objection. *See* (Def.'s Mem. at 13 & Ex. V). Plaintiffs had included that notice in its Memorandum as well but contended that the message contained "several notable falsehoods." *See* (Pls.' Mem. at 6 & Ex. P).

By arguing that Judge Ditter "improperly decided disputed issues of fact concerning the terms of the parties' implied contracts without any authority to do so," (Mot. Recons. at 6), CardConnect imposes a standard akin to summary judgment on an issue that was never reviewed under that standard—or under any standard for that matter. The purpose of the submissions was for Judge Ditter "to determine the terms agreed to when the parties entered this implied contract." (Mem. at 4, ECF No. 68.) That's precisely why each party outlined in their extensive submissions their proposed implied contract terms for Judge Ditter to adopt. *See* (Pls.' Mem., Ex. A, ECF No. 60; Def.'s Mem., ECF No. 62). When Judge Ditter didn't rule in CardConnect's favor, CardConnect contended that he made five factual findings that were not within his power to do so. (Mot. Recons. at 8–13.) But CardConnect's argument is inconsistent with the procedural history—albeit messy—of the case. In its September 22, 2017 Joint Status Report, CardConnect supported narrowing the issues before class certification. *See* (ECF No. 40). Although unsuccessful, CardConnect even tried to stipulate to the terms of the implied contract. *See* (ECF Nos. 51–52, 55). With months of discovery and the filings that followed, CardConnect knew all along that Judge Ditter's role was to determine the terms of the parties' implied contract.

In any event, if CardConnect believed that Judge Ditter did not have the authority to decide certain "disputed facts" with respect to the implied contract terms, it had multiple opportunities to raise this argument—for example, in its memorandum on implied terms or in its response to Plaintiffs' memorandum. "A motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the original motion."

*Federico v. Charterers Mut. Assur. Ass'n Ltd.*, 158 F. Supp. 2d 565, 578 (E.D. Pa. 2001) (*McNeal v. Maritank Phila., Inc.,* No. 97–0890, 1999 WL 80268, at *4 (E.D. Pa. Jan. 29, 1999).

III

Alternatively, CardConnect requests that the Court certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The certification procedure is within the discretion of the district court. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976). "The burden remains on the party seeking certification to demonstrate that 'exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.'" *L.R. v. Manheim Tp. School Dist.*, 540 F. Supp. 2d 603, 608 (E.D. Pa. 2008) (quoting *Douris v. Schweiker*, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002)).

A district court may certify an interlocutory order for immediate appeal if it: (1) involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion" as to its correctness and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). All three criteria must be satisfied. *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 637, 644 (E.D. Pa. 2010). The statutory factors, however, are merely a guide for the Court's discretion. *See Bachowski v. Usery,* 545 F.2d 363, 368 (3d Cir. 1976) ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present.").

A

A "controlling question of law" is one in which either: (1) "if decided erroneously, would lead to reversal on appeal" or (2) is "serious to the conduct of the litigation either practically or legally." *Katz,* 496 F.2d at 755 (citations omitted). Saving the court's time and the litigants' expenses is "a highly relevant factor." *Id.* (citation omitted). A question that "appears to be a controlling question of law" but nevertheless presents a question "about a court's application of the facts of the case to the established legal standards are not controlling questions of law for purposes of section 1292(b)." *Glover v. Udren*, No. 08-990, 2013 WL 3072377, at *2 (W.D. Pa. June 18, 2013) (citation omitted). Here, Judge Ditter received extensive submissions from the parties, who each argued what should comprise the implied contract terms, and favored the Plaintiffs' arguments. His decision does not present the "pure" question of law that interlocutory appeals were designed to address. *See Ahrenholz v. Board of Trustees of Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000).

B

There is a "substantial ground for difference of opinion" when the matter involves "one or more difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements,* 746 F.2d 76, 76 n.1 (1st Cir. 1984). In other words, "[s]ubstantial grounds for difference of opinion exist where there is genuine doubt or conflicting precedent as to the correct legal standard." *Bradburn Parent Teacher Store, Inc. v. 3M,* Civ. A. No. 02–7676, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005). A moving party's citation to numerous conflicting decisions on the same issue might constitute a sufficient basis for the finding that substantial differences of opinion

exist. *See White v. Nix,* 43 F.3d 374, 378 (8th Cir. 1994) (finding that conflicting and contradictory opinions provide substantial ground for a difference of opinion). Additionally, the absence of controlling law on a particular issue can constitute substantial grounds. *Chase Manhattan Bank v. Iridium Africa Corp.,* 324 F. Supp. 2d 540, 545 (D. Del. 2004). However, a court "should not certify questions of relatively clear law merely because the losing party disagrees with [its] analysis." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 706 (M.D. Pa. 2009) (citing *Elec. Mobility Corp. v. Bourns Sensors/Controls,* 87 F. Supp. 2d 394, 398 (D.N.J. 2000)). A

CardConnect argues that "[t]here is no precisely controlling law on the Court's determination to have the parties brief the issue of implied contract terms and then decide disputed issues of fact outside the restraints imposed in a motion for summary judgment." (Mot. Recons. at 19.) CardConnect misconstrues its submission to Judge Ditter; it was not a motion for summary judgment and was never contemplated or argued as such. Further, courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery" to meet the needs of each case. *Crawford–El v. Britton,* 523 U.S. 574, 598 (1998). "It is well established that the scope and conduct of discovery are within the sound discretion of the trial court." *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). After Judge Ditter ruled that there was no binding express contract, he ordered the parties to exchange documents "relevant to the issue of the terms of the implied contract." (Order, ECF No. 47.) That Order stated that "Plaintiffs will designate what they propose are the terms of the implied contract with the intention that the parties will be able to stipulate to the terms" and "Defendant will have 30 days to respond to Plaintiffs' proposed terms." (*Id.*) After

10

several telephone conferences and the parties' unsuccessful attempt to stipulate to the terms of the implied contract, Judge Ditter ordered the parties to take discovery and submit memoranda on the issue, which he would take "under advisement and issue a ruling." *See* (ECF Nos. 55 & 58). He then did just that. *See* (Mem., ECF No. 68). CardConnect fails to offer any conflicting precedent on Judge Ditter's discretionary course of action with respect to his tailoring of discovery and the resolution of an issue the parties agreed to submit to him.

C

Finally, the moving party must establish that certification of the appeal materially advances the ultimate termination of the litigation by considering "whether an immediate appeal would (1) obviate the need for trial; (2) eliminate complex issues, thereby greatly simplifying the trial; or (3) eliminate issues thus making discovery much easier and less costly." *Wheeler v. Beard*, No. 03-4826, 2005 WL 2108702, at *3 (E.D. Pa. Aug. 31, 2005) (citation omitted). Here, the action is over two years old and discovery has been taken on an important issue. A ruling in favor of CardConnect would not materially advance the ultimate termination of the litigation because the case would be remain in the same procedural posture with next steps including class certification. *See Augustin v. City of Phila.*, No. 14-CV-4238, 2016 WL 7042215, at *1 (E.D. Pa. Apr. 8, 2016) (concluding that an immediate interlocutory appeal would not materially advance the ultimate termination of the case where "this action is nearly two years old, extensive discovery has been taken and summary judgment entered as to the admittedly threshold legal issue [and] [t]he necessary next steps here involve the filing of a class certification motion and the fashioning of an appropriate remedy").

An appropriate Order follows.

> BY THE COURT:
>
> ***/s/ Gerald J. Pappert***
> GERALD J. PAPPERT, J.