## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**TEH SHOU KAO and T S KAO, INC.**, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**CARDCONNECT CORP.,**

Defendant.

**TECH LOUNGE SP, LLC and THE LAW OFFICE OF KEVIN ADAMS, PLLC**, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**CARDCONNECT CORP.,**

Defendant.

Consolidated Civil Action No. 2:16-cv-5707

HON. GERALD J. PAPPERT

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

E. Adam Webb
Matthew C. Klase
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, SE, Suite 480
Atlanta, GA 30339

Richard M. Golomb
Kenneth J. Grunfeld
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii

TABLE OF CITATIONS ...............................................................................................iv

BACKGROUND ............................................................................................................1

    A. Factual Background ...............................................................................................1

    B. Procedural History.................................................................................................2

        1. Initial Litigation and First Phase of Discovery ...............................................2

        2. The Second Phase of Discovery and Initial Settlement Discussions...............3

        3. The Third Phase of Discovery ........................................................................5

        4. The Mediation and Settlement........................................................................6

ARGUMENT AND CITATION OF AUTHORITY ....................................................10

    A. Preliminary Approval Is Warranted ....................................................................10

        1. The Settlement Is the Result of Arm's Length Negotiations .........................11

        2. There Was Sufficient Discovery....................................................................13

        3. The Proponents of the Settlement Are Experienced ......................................13

        4. There Is No Known Opposition to the Settlement.........................................14

        5. The Additional Rule 23(e) Factors Support Preliminary Approval...............15

    B. The Settlement Class Should Be Certified ..........................................................16

        1. Numerosity....................................................................................................17

        2. Commonality.................................................................................................17

        3. Typicality .....................................................................................................17

        4. Adequacy of Representation ..........................................................................18

        5. Predominance................................................................................................18

6. Superiority ........................................................................................... 18

C. The Notice Program Should Be Approved ................................................. 19

CONCLUSION .......................................................................................................... 20

<h1 style="text-align:center"><u>TABLE OF CITATIONS</u></h1>

<u>**Cases**</u>

*Amchem Prods, Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 16

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ......................................................................................... 17

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) .............................................................................. 12

*Barnes v. American Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) ..................................................................................... 17

*Brown v. Electrolux Home Prods.*,
  817 F.3d 1225 (11th Cir. 2016) ............................................................................... 18

*Callahan v. Commonwealth Land Title Ins. Co.*,
  1990 WL 168273 (E.D. Pa. Oct. 29, 1990) .............................................................. 14

*Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*,
  275 F. Supp. 3d 1350 (N.D. Ga. 2017) .................................................................... 12

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ......................................................................... 12, 16

*Elias v. Ungar's Food Prods., Inc.*
  2013 WL 12426604 (D.N.J. 2013) ........................................................................... 15

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) ............................................................................... 10

*George v. Academy Mortgage Corp. (UT)*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019) .................................................................... 20

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ............................................................... 11

*In re Am. Family Enters.*,
  256 B.R. 377 (D.N.J. 2000) ...................................................................................... 14

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ..................................................................................... 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................ 11, 16

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................ 15

*In re Diet Drugs Prods. Liab. Litig.*,
   1999 WL 33644489 (E.D. Pa. Dec. 3, 1999) ................................. 14-15

*In re Gen. Instrument Sec. Litig,*
   209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................. 15-16

*In re Gen. Motors*,
   55 F.3d 768 (3d Cir. 1995) ............................................................... 10

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ............................................................. 16

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) ............................................................. 18

*In re NFL Players Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014) ....................................................... 10

*In re Nissan Motor Corp. Antitrust Litig,*
   552 F.2d 1088 (5th Cir. 1977) .......................................................... 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ....................................................... 14

*In re Viropharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. 2016) .................................................... 11

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ...................................................... 10, 19

*McDonough v. Horizon Blue Cross Blue Shield of N.J.,*
   641 Fed. Appx. 146 (3d Cir. 2015) .................................................. 10

*Moore v. Verizon Communications, Inc.*,
   2013 WL 46101764 (N.D. Cal. Aug. 28, 2013) ............................... 20

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .......................................................................... 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ..................................................................... 17

*Phillips Petro. Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................. 19

*Robinson v. Countrywide Credit Indus.*,
    1997 WL 634502 (E.D. Pa. Oct. 8, 1997) ............................................. 16-17

*Rodriguez v. National City Bank*,
    726 F.3d 372 (3d Cir. 2013) ..................................................................... 17

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ...................................................... 14

*Stevens v. SEI Investments Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ............................................. 15

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ..................................................................... 17

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) (en banc) .................................................... 18

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ........................................... 12

*Wood v. AmeriHealth Caritas Servs.*,
    2020 WL 16794549 (E.D. Pa. Apr. 7, 2020) ........................................... 15

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 23(a) ......................................................................................... 17-18

Fed. R. Civ. P. 23(b)(3) .................................................................................... 18-19

Fed. R. Civ. P. 23(e)(2) .......................................................................... 11, 15, 16, 19

## Other Authorities

*Manual for Compl. Litig.* (4th ed. 2014) ............................................................ 16, 19

*Newberg on Class Actions* (5th ed. 2015) ........................................................ 10, 11

Plaintiffs are pleased to report that after three years of hard-fought litigation, the parties have agreed to a class settlement. *See* Agreement (Exhibit A hereto). If approved, the settlement will provide two key benefits to customers of Defendant CardConnect Corp. that were allegedly overcharged for payment processing services. First, CardConnect has agreed to pay up to $7,650,000 to the class members in cash benefits, legal fees and expenses, incentive awards, and settlement administration costs. Second, CardConnect has agreed to revise its contractual terms to provide current customers more time to terminate their accounts without paying early termination fees (often $750) whenever existing payment processing fees are increased or new fees are added by CardConnect.

By any objective measure, the settlement is fair, adequate, and reasonable and merits preliminary approval. Moreover, the settlement class should be certified because the requirements of Rule 23(a) and (b)(3) are met. Finally, the notice program – consisting of individual notice to class members and a detailed settlement website – comports with Rule 23 and due process. Respectfully, the Court should preliminarily approve the settlement, certify the settlement class, direct notice to the class, and schedule a final approval hearing. A proposed order approved by the parties is filed herewith.[1]

## BACKGROUND

### A.  Factual Background.

Plaintiffs are three small business merchants that retained Defendant to process credit and debit card payments made by their customers. Plaintiffs allege that CardConnect did not adhere to the fee schedules it provided merchants at the outset of their relationship but instead – in automated, programmatic fashion – increased fees specified in the fee schedules and added new, unspecified fees.

---

[1] Plaintiffs are authorized to state that Defendant does not oppose the relief requested in this motion. The arguments and contentions contained herein, however, are attributable to Plaintiffs.

Dkt. 14, ¶¶ 10-15; Dkt. 1 in Case No. 17-cv-4014-GJP.  Plaintiffs contend these fee changes constitute a breach of the parties' contract and seek recovery on behalf of a national class of merchants.  Dkt. 14, ¶ 82.  CardConnect vehemently denies these allegations.

**B.**     **Procedural History.**[2]

1.     <u>Initial Litigation and the First Phase of Discovery.</u>  This case was originally filed on November 1, 2016, by T S Kao, Inc. d/b/a Lucky 7 Chinese Food and its owner Teh Shou Kao after they noticed fees on their monthly statements that seemed unusual and their attempts to informally resolve the dispute failed.  Dkt. 1; Joint Decl., ¶¶ 6-13.  After an initial motion to dismiss was filed, the complaint was amended.  *Id.* at ¶¶ 15-16.  The motion to dismiss was subsequently withdrawn and CardConnect answered.  *Id.* at ¶¶ 16, 18.

At the Court's direction, the parties commenced an initial round of discovery focused on the named plaintiffs' claims.  *Id.* at ¶ 24.  The parties thereafter exchanged initial disclosures, negotiated ESI and confidentiality protocols, exchanged multiple sets of written discovery, met and conferred on the sufficiency of each other's responses, and exchanged and reviewed over 15,000 pages of responsive documents.  *Id.* at ¶¶ 24-25.  The parties also negotiated and agreed to an initial stipulation of facts which was filed with the Court.  *Id.* at ¶ 26.

During this first phase of discovery, counsel for Plaintiffs was contacted by several other CardConnect customers that had learned of the case and expressed their desire to be added as class representatives.  *Id.* at ¶ 28.  On September 7, 2017, Plaintiffs Tech Lounge SP, LLC and The Law Office of Kevin Adams, PLLC filed a new case against CardConnect, asserting similar claims challenging CardConnect's billing practices.  Dkt. 1 in Case No. 17-cv-4014-GJP; Joint Decl., ¶ 29.

---

[2] A detailed summary of the pleadings, motion practice, discovery, and mediation/settlement negotiations is set forth in the Joint Declaration of E. Adam Webb and Matthew C. Klase ("Joint Decl."), filed herewith as Exhibit B.

On September 26, 2017, the Court consolidated the cases and instructed the parties to brief the issue of whether CardConnect's form written contract was enforceable even though it had never been signed by Defendant or its member bank.  Dkt. 41; Joint Decl., ¶ 31.  CardConnect submitted its detailed brief, Plaintiffs responded, and Defendant replied.  Dkts. 44-46.  On November 3, 2017, the Court convened a telephone conference where it announced its ruling that the written contracts offered by CardConnect to Plaintiffs were never formed because CardConnect failed to sign them, but the parties instead had an implied-in-fact contractual relationship.  Dkts. 47, 68; Joint Decl., ¶ 33.

2.    The Second Phase of Discovery and Initial Settlement Discussions.    The Court ordered the parties to attempt to stipulate to the terms of their implied-in-fact contracts.  Dkt. 47.  When the parties could not so stipulate, the Court opened a new period of discovery confined to the nature and scope of the named plaintiffs' implied-in-fact contract terms and set a briefing schedule for the parties to submit this issue to the Court for decision.  Dkt. 58; Joint Decl., ¶¶ 33-35.

Over the next few months, the parties exchanged several additional sets of written discovery and over 20,000 pages of new documents and ESI were produced and analyzed.  Joint Decl., ¶ 36.  A total of eight depositions were taken, with Plaintiffs deposing CardConnect's 30(b)(6) witness, CardConnect Chief Operating Officer Patrick Shanahan, and CardConnect Vice President of Operations Brenda Stein in Philadelphia, Pennsylvania, and Defendants deposing Teh Shou Kao and Jenny Shee of Lucky 7 in Ann Arbor, Michigan, Kevin Adams of Adams Law in Livonia, Michigan, and Chad Fisher and Nena Fisher of Tech Lounge in Stevens Point, Wisconsin.  *Id.* at ¶ 37.

Following the completion of this second period of discovery, the parties submitted briefs in support of their proposed contract terms (Dkts. 60-61), as well as briefs in response to each other's proposed contract terms (Dkts. 65-66).

On September 26, 2018, the Court ruled that:  (a) the parties agreed to the fees set forth in the service fee schedules; (b) the parties never agreed CardConnect had unilateral discretion to modify those fees; (c) CardConnect's argument was premised on the written contract, which the Court previously found did not come into effect; (d) CardConnect deducted fees before providing itemized statements and did not always provide advance notices of increased fees; (e) some of the advance notices CardConnect did provide via statement messages of increased fees were ineffective to permit CardConnect's unilateral fee modifications; and (f) some merchants faced paying a penalty if they terminated accounts early because they objected to a new fee. Dkt. 68, pp. 1-6.  Based on such findings, the Court held that:

> CardConnect agreed to provide its services for the fees and rates set forth in each Plaintiff's service contract and is limited to those terms absent a mutual modification of the implied contract.  All unsolicited and unilateral changes made in various billing statements that were not by mutual agreement are not binding on the plaintiffs.  In the absence of an allegation by CardConnect that a plaintiff agreed to a contract modification, the fees originally set forth stand.

Dkt. 69.

CardConnect moved for reconsideration or, alternatively, certification for interlocutory review (Dkt. 71), Plaintiffs opposed (Dkt. 72), and CardConnect replied (Dkt. 73).  While the motion was pending, the parties agreed to put the litigation on hold and participate in a settlement conference before Magistrate Judge Hey.  Joint Decl., ¶¶ 42-44.  To ensure the parties were adequately prepared, over the next several months CardConnect produced voluminous data to Plaintiffs and their data expert, Kevin Jewell, that included lists of current and former customers, the contracts, statements, and raw data showing the subject fees paid by a sample of current and former customers, and aggregate amounts of subject fees earned by CardConnect during the class period.  *Id.* at ¶¶ 45-46.  More than 20,000 pages of additional contract and statement documents were ultimately produced, as well as detailed spreadsheets with the billing data for the sample customers.  *Id.*

Plaintiffs' expert organized the data, wrote code to extract overcharges relating to the subject fees, and created demonstrative exhibits detailing his findings for use at the mediation, which were provided in advance to CardConnect and Magistrate Judge Hey. *Id.* at ¶¶ 46-47. The settlement conference occurred on June 10, 2019, but was unsuccessful. *Id.* at ¶ 48. The case then returned to active litigation.

On June 26, 2019, the Court entered an order denying CardConnect's motion for reconsideration and motion to certify the Court's prior order for interlocutory appeal. Dkts. 98-99.

3. <u>The Third Phase of Discovery.</u> On July 3, 2019, the Court opened a third phase of discovery on class certification issues. Dkt. 101. Plaintiffs served a third round of written discovery, reviewed 1,000 pages of additional information produced by CardConnect, and met and conferred with CardConnect on its responses. Joint Decl., ¶¶ 51-53. Court guidance was sought on a few issues that the parties were unable to resolve among themselves. *Id.* at ¶¶ 51, 54; Dkts. 102-07.

Plaintiffs took an additional four fact witness depositions during the class discovery phase, deposing CardConnect Vice President of Information Management Johnny Stevning in Denver, Colorado, and CardConnect Agent Support Specialist Dan Arison, as well as two additional CardConnect Rule 30(b)(6) depositions in Philadelphia, Pennsylvania. Joint Decl., ¶ 55. The parties also exchanged voluminous, detailed expert reports and deposed each other's experts, with Kevin Jewell being deposed in Austin, Texas, and defense expert Sonya Kwon being deposed in Irvine, California. *Id.* at ¶ 56. Plaintiffs also submitted a rebuttal expert report from Mr. Jewell. *Id.*

In November 2019, while such discovery was in progress, the parties agreed to hold a mediation in Miami, Florida with well-respected class action mediator Rodney Max of Upchurch, Watson, White, & Max, on March 13, 2020. *Id.* at ¶ 57. Defendant agreed to provide – and did

provide – additional class data prior to the mediation, including its own expert analysis and estimate of the class-wide damages at stake. *Id.*

Plaintiffs prepared a voluminous mediation statement that addressed the most significant merits and class certification issues at issue in the litigation. *Id.* at ¶ 58. By way of example, Plaintiffs argued their expert could use CardConnect's billing and other data to ascertain class members and calculate damages, as well as Plaintiffs' ability to ultimately prevail on their arguments that the subject fees violated each class member's fee schedule and defeat CardConnect's defenses (such as voluntary payment). *Id.* CardConnect responded by arguing that it did not maintain sufficient data to allow class member identities to be programmatically ascertained and thus a file-by-file review was necessary to both determine class membership and liability and calculate damages. CardConnect also remained bullish on its merits defenses, including its position that it would eventually have this Court's ruling on the validity of the written contracts reversed on appeal. *Id.*

4. <u>The Mediation and Settlement.</u> On March 13, 2020, after a full day of good faith, contentious mediation with Mr. Max, the parties were able to hammer out and execute a memorandum of understanding on a class settlement. *Id.* at ¶ 59. The Court was thereafter informed of the settlement. Dkt. 109. The negotiations were at arm's length and the parties utilized Mr. Max's services to bridge particularly challenging issues. Joint Decl., ¶ 59.

The agreement was contingent on CardConnect providing confirmatory discovery backing up its mediation estimate as to the relative percentages of former and current customers in the class. *Id.* at ¶ 61. Such confirmatory discovery revealed different percentages of former and current customers than the parties were expecting, which forced the parties to exchange proposals amending the structure of the deal so as to ensure class members were treated fairly vis-a-vis each other. *Id.* This generated several weeks of additional negotiations, which ultimately resulted in the settlement, the terms of which

are detailed in the agreement filed herewith as Exhibit A.  *Id.* at ¶¶ 62-64.  The following is a summary of the material terms of the settlement:

<u>*Settlement Class:*</u>  The settlement class – an opt-out class under Rule 23(b)(3) – is defined as:  "All CardConnect Merchants that paid at least one of the Subject Fees from November 1, 2012 through the date of Preliminary Approval."  Settlement, ¶ 3.1.  "CardConnect Merchants" are those merchants that became customers by signing an agreement for processing services with Defendant that is governed by Pennsylvania law.  Settlement, ¶ 2.2.  The "Subject Fees" are listed in paragraph 2.28 of the settlement.  Several types of entities listed in the settlement are excluded from the class, including those owned by or affiliated with Defendant.  *Id.*

<u>*The Relief:*</u>  Both monetary and non-monetary relief is being provided to settlement class members.  First, Defendant will pay up to $7.65 million to the class, including cash benefits via checks, legal fees and expenses, incentive awards to the class representatives, and notice and administration costs.  Settlement, ¶ 9.1.  All settlement class members – roughly 110,000 in number – are eligible to receive a cash payment.  Settlement, ¶ 9.2; Joint Decl., ¶ 66.  Class members that are current customers will receive their payments *automatically* via check, while the class members that are former customers will receive their payments via check if they complete a simple claim form attesting that they contracted with Defendant during the class period and provide their current contact information.  Settlement, ¶¶ 9.2.1, 9.2.3; Claim Form (Exh. A to Settlement); Joint Decl., ¶ 67.

There is good reason to pay current customers automatically while compelling former customers to file a claim.  Current customers are active entities for which CardConnect maintains current address information.  Thus, a high percentage of the checks sent to such customers are likely to be cashed.  Former customers, meanwhile, may not be active entities and the address information

possessed by CardConnect is often stale and outdated.  Thus, if checks were automatically sent to former customers, the cash rate would be extremely low.  Joint Decl., ¶ 68.  The claim process allows former customers to provide updated address and payee information so as to ensure checks are routed to the correct location.  *Id.*

The amount of the cash payments is calculated as described in the settlement.  One-third of the net settlement benefits (the amount remaining after payment of all other obligations) are allocated to current customers and two-thirds is allocated to former customers.  Settlement, ¶¶ 9.2.1, 9.2.3.  These amounts will be split among both groups in the same manner, with 35 percent being equally allocated, on a *per capita* basis, to each member, and 65 percent being allocated, *pro rata*, based on the total number of calendar months each member was a customer of Defendant during the class period.  *Id.* Given that the "subject fees" are all monthly or annual charges that are not tied to processing volume, this allocation method ensures that class members who were customers for longer periods of time (and thus had more exposure to the subject fees) will receive larger payments from the settlement.  Joint Decl., ¶¶ 69, 75.  This formula was chosen to ensure class members are fairly compensated relative to each other.  *Id.*

The settlement also provides significant non-monetary relief to current customers.  Settlement, ¶ 9.2.2.  Namely, CardConnect will amend the terms and conditions governing its merchant agreement so that current customers will now have 50 days after receiving notice of a CardConnect-initiated fee increase or new fee to terminate their accounts without payment of an early termination fee.  *Id.*  This term, which must remain in place for at least three years, could potentially save each merchant that would rather cancel its account than pay the increased or new fees ***up to $750***.  Joint Decl., ¶ 75.  This is a significant achievement for merchants that would rather take their business elsewhere than be subjected to a new or increased fee.  *Id.*

*Administration, Notice, and Claim Program:*   Following a competitive bid process, the parties have chosen KCC Class Action Services LLC to administer the settlement.   KCC is a well-known firm that has successfully administrated many class action settlements.   Joint Decl., ¶ 81; KCC Experience Brochure (Exh. 2 to Joint Decl.).

The parties propose to individually notify each class member of the settlement.   Current customer class members will be notified via an insert in their monthly billing statement, which CardConnect will either send via U.S. mail or upload to CardConnect's online CardPointe platform (if the customer has previously instructed CardConnect to provide statements via CardPointe).   Settlement, ¶ 4.1.1; Joint Decl., ¶ 80.   Former customers, meanwhile, will be sent a postcard with an attached claim form via U.S. mail.   Settlement, ¶ 4.1.2; Joint Decl., ¶ 80.   In the event mailed notices are returned, the administrator will use reasonable efforts to locate a current mailing address and, if CardConnect possesses an email address for that customer, an email notice will also be sent (with a link for former customers to submit a claim electronically via the settlement website maintained by the administrator).   Settlement, ¶¶ 4.1.1-4.1.4; Joint Decl., ¶ 80.

*Attorneys' Fees and Expenses and Service Awards:*   Class counsel will apply to the Court for an award of legal fees and expenses.   The class will be notified that class counsel may request reimbursement of expenses they reasonably incurred up to $100,000 and attorneys' fees of up to one-third of the settlement amount.   Defendant will not oppose these requests.   Settlement, ¶ 9.3. Also, class counsel will apply for, and Defendant does not oppose, incentive awards of up to $15,000 for each class representative to compensate them for the substantial efforts and risk they undertook on behalf of the class.   *Id.* at ¶ 9.4.   The parties did not negotiate the amount of fees and expenses or incentive awards until after the key provisions of the settlement, including the amount of the direct relief to the class, was agreed upon.   Joint Decl., ¶ 63; Settlement, ¶ 9.3.

9

<u>Release:</u>  The settlement class will provide a full release to Defendant from claims relating to the issues raised in this case or that could have been raised.  The releases are set forth in more detail in paragraphs 10.1 through 10.11 of the settlement.

## ARGUMENT AND CITATION OF AUTHORITY

### A.      Preliminary Approval Is Warranted.

The Third Circuit has observed that there is "an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *also, e.g.*, *In re Gen. Motors*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  As a result, courts "should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.'"  *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 Fed. Appx. 146, 150 (3d Cir. 2015) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)).

Review of a proposed class action settlement is a two-step process.  First, the court conducts a preliminary review to determine whether the settlement is entitled to a presumption of fairness and notice should be directed to the class.  *Newberg on Class Actions* § 13:10 (5th ed. 2015); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008).  Second, after notice to the class and an opportunity for class members to object or otherwise be heard is given, the court sets a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate and whether the settlement should be finally approved under Rule 23(e).  *In re NFL Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

At the preliminary approval stage, there is no need to "conduct a trial on the merits."  *Newberg on Class Actions* § 13:10.  Rather, the court's main objective "is to establish whether to direct notice of

the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."
*Id.*  Courts have generally held that preliminary approval is appropriate and entitled to a presumption of fairness if "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001).  Moreover, Congress recently amended Rule 23 to focus inquiry on the effectiveness of the method of relief distribution, the proposed attorneys' fees, any side agreements, and whether a settlement treats class members fairly vis-à-vis each other.  Fed. R. Civ. P. 23(e)(2)(C)(2)-(4).  Here, preliminary approval is warranted under all applicable standards.

       1.    <u>The Settlement Is the Result of Arm's Length Negotiations.</u>  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval."  *Newberg on Class Actions* § 11.41.  Here, the settlement was negotiated at arm's length, without collusion, and with the assistance of a respected mediator.  *See, e.g.*, *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, *8 (E.D. Pa. Jan. 25, 2016) ("'the participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties'") (quoting *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, *7 (D.N.J. Oct. 13, 2010)).  After a failed mediation before the Magistrate, the settlement finally resulted after a full day of adversarial mediation and two months of additional negotiations, and was entered only after the exchange of substantial formal, informal, and confirmatory discovery, expert analysis, and several rounds of detailed legal briefing.  *See generally* Joint Decl.

      Moreover, the settlement which was ultimately reached is within the range of reason.  The $7.65 million settlement represents approximately 29 percent of Plaintiffs' estimate as to the class's

most likely recoverable trial damages and 35 percent of CardConnect's damage estimate.   Joint Decl., ¶ 76.   Class members that remain customers of CardConnect will also receive an important non-monetary benefit in the form of increased opportunity to terminate service without penalty in the event of future fee increases.   Joint Decl., ¶ 75; Settlement, ¶ 9.2.2.

These benefits compare favorably with similar class settlements approved in other cases. *See, e.g., Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*, 275 F. Supp. 3d 1350, 1354 (N.D. Ga. 2017) (class payment processing settlement recovering 25-50% of damages); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (approving settlement providing for 17% of the potential recovery); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, *21 (E.D. Pa. Apr. 21, 2020) (approving settlement providing for 11.5% of potential trial recovery); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (settlement providing six percent of damages approved and noting "fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean [it] is unfair or inadequate").

Indeed, the settlement benefits are quite impressive given the many litigation risks.   For instance, without the settlement, there was a risk that the Court would accept Defendant's argument that the implied contract laws of all 50 states would apply and find insurmountable manageability problems.   Joint Decl., ¶ 72.   Predominance obstacles were also present given Defendant's allegations that each schedule of fees is individually negotiated and merchants often voluntarily agree to amend such fee schedules via telephone, on an individual basis.   *Id.*   Assuming a class could be certified, Plaintiffs also risked losing on summary judgment on one of CardConnect's many merits defenses (such as voluntary payment), at trial, or on appeal (where Defendant would argue that the Court's ruling that signatures were required in order for its contract to take effect was legally erroneous).   *Id.* at ¶ 73.   Although Plaintiffs are confident they could overcome these

12

obstacles, the risks could not be ignored and were large factors in the arm's length negotiations.  *Id.* at ¶¶ 71-74.

2.      <u>There Was Sufficient Discovery.</u>  This factor ensures that the plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.  Here, class counsel conducted an extensive investigation before filing the cases, obtained much written discovery, procured and reviewed 35,000 pages of document discovery, took or defended a total of 14 depositions, obtained sufficient mediation discovery to enable a qualified expert to estimate class damages (including an additional 20,000 pages of documents and fee data), retained a class certification expert to prepare a report and rebuttal report, and obtained confirmatory discovery following mediation to confirm the class size.  *See generally* Joint Decl.  It is clear class counsel and the class representatives had enough information to adequately analyze the case's strengths and weaknesses and position themselves to negotiate a fair settlement for the class.  Joint Decl., ¶¶ 6-57.

3.      <u>The Proponents of the Settlement Are Experienced.</u>  E. Adam Webb and Matthew Klase of Webb, Klase & Lemond, LLC are veteran class action litigators, as are local counsel Richard Golomb and Ken Grunfeld of Golumb & Honik, P.C.  Joint Decl., ¶¶ 2-4, 12; WKL Firm Résumé (Exh. 1 to Joint Decl.).  Mr. Webb and Mr. Klase were further uniquely equipped to analyze the strengths and weaknesses of this case, given their substantial experience pursuing class action litigation against payment processing companies for allegedly overbilling their merchant customers.  Joint Decl., ¶¶ 5, 77; WKL Firm Résumé, p. 2.  Indeed, counsel have been on both of sides of such cases, with two having been lost and successful class-wide settlements having been reached in four others.  Joint Decl., ¶ 77.

It is this practical knowledge and experience that allowed class counsel to accurately

weigh the likelihood of prevailing against the litigation risks and led to a favorable settlement for the class. All settlement class members are eligible to receive tangible monetary benefits representing a fair percentage of their potential damages and existing customers will also benefit from the revised practice providing more opportunity to avoid the substantial early termination charge when fees are increased. On the other hand, if for example the Court enforced the voluntary payment doctrine or declined to certify a class, settlement class members would recover nothing. Given that class members are primarily small and mid-size businesses, even a delay in the outcome of the litigation would increase the risk that some of those customers impacted by the alleged practices would be unable to benefit from favorable rulings.

Under the circumstances here, counsel was well-positioned to determine the settlement is in the best interests of the class. Their opinions are entitled to great weight. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *also, e.g.*, *In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations"); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010); *Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273, at *16 (E.D. Pa. Oct. 29, 1990) ("a court should refrain from merely substituting its own judgment of the merits of a settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses").

4.     <u>There Is No Known Opposition to the Settlement.</u>   Although there are no known objections to the settlement, courts typically do not substantively consider this factor until notice has been provided to settlement class members. *In re Diet Drugs Prods. Liab. Litig.*, 1999 WL

33644489, *4 (E.D. Pa. Dec. 3, 1999) ("no evidence exists at th[e] [preliminary approval] stage for the court to conclude anything other than that only a small fraction of the class has objected"); *Elias v. Ungar's Food Prods., Inc.*, 2013 WL 12426604, *2 n.1 (D.N.J. Jan. 28, 2013) ("Although the Third Circuit includes a fourth factor for consideration – whether only a small fraction of the class has objected to the settlement – notice of the settlement had not yet been given to the class at this juncture").

    5.    The Additional Rule 23(e) Factors Support Preliminary Approval.    Here, the proposed method of distributing relief is simple and straightforward.  Fed. R. Civ. P. 23(e)(2)(C)(ii) (court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims").  Class members that are current customers will be automatically mailed checks, while class members that are former customers need only complete and return a short, easy-to-understand claim form with an updated address to get their checks. Claim forms can be returned via mail (postage is prepaid) or filled out by clicking on a link in the email notice or via the settlement website.  Settlement, ¶¶ 9.6.1-9.6.2.

    Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment."  Here, the agreement provides for a fee of up to one-third of the settlement amount, following court approval and after any settlement becomes final.  Settlement, ¶ 9.3.  One-third of the settlement amount is an oft-awarded fee percentage in this Circuit.  *E.g.*, *Wood v. Amerihealth Caritas Servs., LLC*, 2020 WL 1694549, *9 (E.D. Pa. Apr. 7, 2020) (Pappert, J.) (awarding one-third and collecting cases awarding at or near one-third); *Stevens v. SEI Investments Co.*, 2020 WL 996418, *12 (E.D. Pa. Feb. 28, 2020) (noting courts often award one-third of settlement amount); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (awarding counsel one-third of $7 million settlement that had been zealously litigated for over three years); *In re*

15

*Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 434 (E.D. Pa. 2001) (approving attorneys' fees amounting to 33% of $48 million settlement); *Cullen*, 197 F.R.D. at 150 (one-third fee).

There are no agreements between the parties other than the settlement.   Fed. R. Civ. P. 23(e)(2)(C)(iii) ("the parties seeking approval must file a statement identifying any agreement made in connection with the proposal"); Joint Decl., ¶ 82.

Finally, all class members have the opportunity to receive a payment from the fund pursuant to an allocation formula that was designed to ensure that they will be fairly compensated relative to each other given the strength of their respective claims.   Joint Decl., ¶¶ 69, 75.   The merchant-friendly practice change to allow more opportunity to terminate without penalty will also provide significant benefits to current customers.   *Id.*   at ¶ 75.   In summary, all class members have the equivalent opportunity to benefit from the relief provided by the settlement.

**B.**      **The Settlement Class Should Be Certified.**

When a settlement is reached before certification, a court must determine whether to certify the settlement class.   *See, e.g., Manual for Compl. Litig.,* § 21.632 (4th ed. 2014); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).   Certification of a settlement class is warranted when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied.   *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009).   However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620. The decision to certify is within the broad discretion of the district court. *In re Cendant*, 264 F.3d at 231.

This case – which involves form fee schedules, a common course of billing conduct, and a common damages methodology – is the archetypical class action. *Robinson v. Countrywide*

16

*Credit Indus.*, 1997 WL 634502, *3 (E.D. Pa. Oct. 8, 1997).  Certification of a settlement class is warranted.

1.      Numerosity:   Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable."  Here, the settlement class consists of approximately 110,000 merchants, making joinder of all class members impossible.   Joint Decl., ¶ 66; *also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (40 members sufficient for numerosity).

2.      Commonality:   "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).   Thus, commonality is "easily met" in most instances.  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Here, all members of the settlement class assert the same legal claims (breach of implied contract), that they were injured in the same ways (i.e., by CardConnect's imposition of fees that conflict with their fee schedules), and that their injuries resulted from Defendant's programmatic, common billing practices.  Thus, proving their claims will involve numerous common questions of law and fact that will be resolved in the same way for all class members.

3.      Typicality:   Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class."  This "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).  Here, the claims of the Plaintiffs and those of all class members arise from the same alleged misconduct and are based on the same legal theory.

4.   <u>Adequacy of Representation</u>:   Rule 23(a)(4)'s adequacy of representation requirement "tests the qualifications of class counsel and the class representatives.  It also aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).  Here, two of the Plaintiffs (Tech Lounge and Adams Law) are former customers and one (Lucky 7) is a current customer, thereby ensuring representation for both types of class members.  Plaintiffs do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced.  Joint Decl., ¶¶ 2-4, 77.

5.   <u>Predominance</u>:   Here, Plaintiffs allege that this case is certifiable under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  Courts are "more inclined to find the predominance test met in the settlement context."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n. 29 (3d Cir. 2011) (en banc).  Here, Plaintiffs contend that this requirement is met because the overwhelming issues of law and fact – regarding the implied contract terms and Defendant's billing practices thereunder – are common to the class members.  From Plaintiffs' perspective, the only individual issue relates to damages, which does not defeat predominance given damages can be calculated programmatically.  *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("black letter rule recognized in every circuit is that individual damage calculations generally do not defeat predomina[nce]").

6.   <u>Superiority</u>:  Rule 23(b)(3)'s superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available

methods of adjudication." *In re Warfarin*, 391 F.3d at 533-34.  Litigating the claims of 110,000 settlement class members, each with relatively small potential damages, and requiring presentation of the same evidence and expert opinions over and over again, would obviously be inefficient.  The superiority element is satisfied.

**C.**     **The Notice Program Should Be Approved.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . ." *Manual for Compl. Litig.* § 21.312.   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *In re Cendant*, 109 F. Supp. 2d at 254.  Here, the notices themselves inform the settlement class members about the scope of the settlement, their rights under the settlement, where they can find more information, the details of the final approval hearing, and of class counsel's intention to seek fees of up to one-third of the settlement fund, reimbursement of their litigation costs, as well as $15,000 incentive awards for each of the Plaintiffs.  *See* Notices (Exhs. C - E to Settlement).  Hence, the notices are "reasonably calculated, under [the] circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The parties propose to provide these notices to class members via direct, individual notice. Current customers will be notified via their monthly statement and former customers will be notified

via U.S. Mail.  Settlement, ¶¶ 4.1.1-4.1.2.  Email notice is used as a backstop in the event the monthly statements or mail notices are returned as undeliverable and updated addresses cannot be located.  *Id.*  The settlement website will also contain substantial information regarding the lawsuit and the settlement.  *Id.* at ¶ 4.1.4.

This notice program satisfies the requirements of due process and Rule 23(e) and should be approved.  Indeed, direct notice is the preferred method in class actions and the billing statement, U.S. mail, and email methods proposed by the parties are all routinely used and approved.  *E.g.*, *In re Nissan Motor Corp., Antitrust Litig.*, 552 F.2d 1088, 1097-98 (5th Cir. 1977) (holding that mailed notice should be used where the "last known address of those class members can be identified with reasonable effort"); *Moore v. Verizon Communications Inc.*, 2013 WL 46101764, *14 (N.D. Cal. Aug. 28, 2013) (overruling objection to notice via monthly statement and finding "numerous other courts have approved the use of notice plan that included class notice via bill notice inserts"); *George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1368 (N.D. Ga. 2019) (finding email notice satisfies due process and Rule 23).  Accordingly, direct notice by U.S. Mail, billing statements, and email, supplemented by the informative settlement website, satisfies due process requirements and should be approved.

## CONCLUSION

For the reasons set forth above and in the accompanying materials, Plaintiffs request that the Court grant this unopposed motion and enter an order to:  (1) preliminarily approve the proposed settlement; (2) certify the settlement class; (3) appoint Plaintiffs as class representatives and their counsel as class counsel; (4) approve the notice program; and (5) schedule the final approval hearing.

Respectfully submitted,

**Dated:  June 19, 2020**

*/s/ E. Adam Webb*

E. Adam Webb, Esquire
Matthew C. Klase, Esquire
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, SE, Suite 480
Atlanta, GA 30339
Phone: (770) 444-0773
Fax:    (770) 217-9950
Email: Adam@WebbLLC.com
            Matt@WebbLLC.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email: rgolomb@golombhonik.com
            kgrunfeld@golombhonik.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 19th day of June, 2020, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

*/s/ E. Adam Webb*
E. Adam Webb